UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| **RICKY FLAMINGO BROWN SR.** **#134855,** | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 3:22-cv-00547 |
| v. | ) | Judge Trauger |
|  | ) |  |
| **CORECIVIC, et al.,** | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM AND ORDER**

Ricky Flamingo Brown Sr. (Brown Sr.) filed this civil case following the death of his son, Ricky Flamingo Brown Jr. (Brown Jr.), at Trousdale Turner Correctional Center (TTCC). At the time of Brown Jr.'s death, he and Brown Sr. were both confined at TTCC. About two weeks later, Brown Sr. was transferred to Morgan County Correctional Complex (MCCX). Brown Sr. filed a pro se complaint in state court, and four defendants filed a notice of removal. Brown Sr. filed a motion alleging that removal was procedurally improper because all defendants did not consent, though the motion's only requests for relief are to stay the case and appoint counsel. (Doc. No. 8.) Brown Sr. has since conveyed his desire for the case to proceed. (Doc. Nos. 13–14.)

As explained below, Brown Sr.'s motion (Doc. No. 8) will be denied without prejudice, but he will have an opportunity to respond to this order within 30 days and clarify if he is seeking remand back to state court based on the potential defect he raised regarding the notice of removal. Brown Sr. should carefully read this entire order, which includes instructions for him to follow and a brief discussion of issues Brown Sr. may want to consider if this case remains in federal court. Meanwhile, the removing defendants must respond to this order within 30 days to provide a better explanation for the lack of unanimous consent to removal.

## I. Background

The complaint alleges that Brown Jr. suffered violations of state and federal law from the circumstances surrounding his death. (*See* Doc. No. 1-1 at 8, 11 (bringing claims under Tenn. Code Ann. § 20-5-106 and 42 U.S.C. § 1983).) The complaint also alleges that Brown Sr. personally suffered violations of federal law at TTCC and MCCX after Brown Jr.'s death. (*Id.* at 8–9, 12.)

### A. Circumstances Surrounding Brown Jr.'s Death

In January 2021, Brown Jr. arrived to TTCC and was placed in the housing unit for chronic care patients. (*Id.* at 2, 11–13.) In early February 2021, Brown Jr. overdosed on fentanyl and received an "excessive" dose of Narcan, a drug used to treat opioid overdoses. (*Id.* at 12, 17, 21.) Brown Jr. experienced many symptoms after this event, leading Brown Sr. to believe that Brown Jr. was allergic to Narcan. (*Id.* at 13, 17.) In late May 2021, two officers observed Brown Jr. bent over in his cell during a formal count around 9:00 p.m., but they did not check on him at that time. (*Id.* at 13.) When the officers returned around 4:00 a.m., Brown Jr. was in the same position and unresponsive, so the officers called medical. (*Id.* at 14.) A medical provider administered CPR and a large dose of Narcan, but Brown Jr. was not revived, and he was pronounced dead in his cell.[1] (*Id.* at 14, 16, 18–19, 22, 25.) According to an autopsy report, Brown Jr. had been dead "for at least four hours" by the time the officers returned to his cell at 4:00 a.m. (*Id.* at 15.) The complaint also alleges that the Narcan administered to Brown Jr. was inadequately labeled because it did not list "what happen[s] when a person has an allergic reaction to" it. (*Id.* at 21, 31.)

### B. Treatment of Brown Sr. After Brown Jr.'s Death

Later during the morning of Brown Jr.'s death, Chaplain Fletcher and Lt. Robinson informed Brown Sr. of Brown Jr.'s passing. (*Id.* at 18, 26.) Brown Sr. requested to hold a memorial

---

[1] Administering this dosage of Narcan allegedly "impeded a criminal investigation and destroyed evidence" because Brown Jr. could have been murdered by an officer who gave him fentanyl. (*Id.* at 14, 23, 29–30.)

2

service, and Chaplain Fletcher approved the request. (*Id.*) Lt. Robinson took Brown Sr. to speak with Chief of Security McCloud, CoreCivic Investigator Amber Woods, and TDOC Chief of Security Tidwell. (*Id.* at 30.) These three officials lied to Brown Sr. that Brown Jr.'s body was still in his cell being investigated, when Brown Jr.'s body had actually been removed from TTCC shortly after he was declared dead. (*Id.* at 18–19, 30.)

The next day, Brown Sr. attempted to present memorial service materials to Chaplain Fletcher, but Fletcher was unavailable. (*Id.* at 18, 26.) Instead, Brown Sr. spoke to Chaplain Shonebarger, who told Brown Sr. to present a program for review and gave him a blank form stating that he could have no more than 60 inmates attend the service. (*Id.*) A day or two later, Sergeant Crawford took Brown Sr. to Shonebarger's office to present the proposed program. (*Id.*) Brown Sr. presented a list of 60 inmate attendees and requested to view Brown Jr.'s body. (*Id.* at 18–19, 26.) Shonebarger responded that Brown Sr. did not have a right to view Brown Jr.'s body or attend his funeral service in the community because Brown Sr. had been convicted of aggravated rape. (*Id.* at 19, 26.) Shonebarger also said that Brown Jr. was a gang member. (*Id.* at 19.) At that point, Crawford told Brown Sr., "let's go because I don't like how he is addressing you in that tone of voice." (*Id.* at 19, 27.)

A day later, Brown Sr. explained the Shonebarger exchange to Chaplain Fletcher. (*Id.* at 19, 27.) Fletcher then took Brown Sr. to Unit Manager Vandyke's office and asked her to prepare the passes for inmates to attend Brown Jr.'s memorial service. (*Id.*) Vandyke refused, stating that the inmates were all gang members and the list of attendees looked like a "crip convention." (*Id.*) Fletcher said that inmates' gang affiliations should not keep Brown Sr. from having a memorial service for his son. (*Id.*) Vandyke and Fletcher then went to Assistant Warden Watwood's office, and when they returned, Vandyke stated that Watwood agreed with her. (*Id.*) Fletcher said that

3

Brown Sr. was being "subjected to racial profiling" because Brown Jr. had taken issue with Vandyke's treatment of Black inmates before he died. (*Id.* at 19.) Brown Sr. requested a copy of the rejected inmate list from Unit Manager Vandyke, and she refused. (*Id.* at 20, 27.) Soon thereafter, Brown Sr. filed a grievance against Vandyke and Chaplain Shonebarger, and he sent a letter of complaint to James Stogner, CoreCivic's Director of Chaplaincy. (*Id.* at 10, 20, 27.)

Brown Sr. later explained the memorial service situation to TDOC Liaison Walton. (*Id.* at 20.) Walton told Brown Sr. to make a written request addressed to Walton and Warden Frink, and Walton would take it to Frink himself. (*Id.* at 20, 27.) Brown Sr. brought this request to Walton on a Friday. (*Id.* at 20.) The following Monday, June 14, 2021,[2] Brown Sr. was transferred to MCCX without notice. (*Id.* at 11, 13, 20.) Brown Sr. alleges that this transfer was due to Assistant Warden Watwood's opposition to the memorial service and retaliation for filing grievances against Unit Manager Vandyke and Chaplain Shonebarger. (*Id.* at 20, 27–28.)

After arriving at MCCX, Unit Manager Bunch and Colonel Matheson continued retaliating against Brown Sr. by filing a false disciplinary charge against him. (*Id.* at 28.) While Brown Sr. was in lock up for this charge, Bunch and Matheson searched his property and took documents regarding Brown Jr.'s death. (*Id.* at 12, 28.)

## II. Parties to the Case

### A. Plaintiff

The complaint alleges that Brown Jr. is survived by five children, his mother, and his father (Brown Sr.). (*Id.* at 8–9.) These family members are all listed as plaintiffs. (*Id.*) But Brown Sr. is the only person who signed the complaint (*id.* at 31), so the court considers Brown Sr. to be the only plaintiff. *See* Fed. R. Civ. P. 11(a) (requiring all parties not represented by an attorney to

---

[2] The complaint alleges that Brown Sr. was transferred on Monday, June 13, 2021, but June 13 was a Sunday, so the court assumes that the transfer occurred on June 14. (*See* Doc. No. 1-1 at 20.)

personally sign every filing submitted to the court). And because Brown Sr. is not licensed to practice law, he cannot "assert the rights of others," including Brown Jr.'s other surviving family members. *See Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018) ("[U]nder 28 U.S.C. § 1654, [] plaintiffs in federal court may not appear pro se where interests other than their own are at stake. Indeed, we have consistently interpreted § 1654 as prohibiting pro se litigants from trying to assert the rights of others.") (internal citations and quotation marks omitted).

### B. Defendants

Although not immediately clear at first glance, the complaint names at least sixteen defendants. Across three captions within the pleading, the complaint names: (1) CoreCivic, Inc.; (2) CoreCivic Healthcare Department; (3) Martin Frink; (4) Amber Woods; (5) Chief of Security McCloud; (6) James Stogner; (7) Assistant Warden Watwood; (8) Unit Manager Vandyke; (9) Chaplain Shonebarger; (10) Unit Manager Bunch; (11) Colonel Matheson; (12) Trousdale County; and (13) Special Agent Tidwell. (Doc. No. 1-1 at 2, 8, 30.) And in other parts of the complaint referencing defendants, the complaint names: (14) an unknown "Hospital Administrator/ Healthcare Provider" employed by CoreCivic; (15) Adapt Pharma Operation Limited; and (16) Emergent Bio Solution. (*Id.* at 10, 21–22, 31.)

### III. Notice of Removal and Instructions to the Defendants

"[A] defendant seeking removal to federal court must obtain the consent of all other 'properly joined and served' defendants to ensure the [removal] is unanimous." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015) (quoting 28 U.S.C. § 1446(b)(2)(A)). This is called the "rule of unanimity," and by its own terms, the rule does not encompass a defendant who "has not been served with service of process at the time the removal petition is filed"; there is also an exception to the rule for a defendant who "is merely a nominal or formal party." *Beasley v.*

*Wells Fargo Bank, N.A. for Certificate Holders of Park Place Sec., Inc.*, 744 F. App'x 906, 914 (6th Cir. 2018) (quoting *Klein v. Manor Healthcare Corp.*, No. 92-4328, 1994 WL 91786 at *9 n.8 (6th Cir. Mar. 22, 1994)).

Here, the notice of removal was filed by four defendants—CoreCivic, Inc., Jon Shonebarger, James Stogner, and John Borden.[3] (Doc. No. 1-1.) They assert that they were "not aware that any other individuals or entities [had] been served with the Summons and Complaint" at the time of removal. (*Id.* at 2.) Within thirty days of removal,[4] however, Brown Sr. submitted a filing that attaches what appear to be copies of state court summonses sent to two more named defendants—Trousdale County and Emergent Bio Solutions.[5] (Doc. No. 8 at 3–4, 7–14.) This raises doubts that the four removing defendants are the only defendants who had been properly served with the complaint at the time of removal.

Although it would be premature to make an affirmative finding that Trousdale County and Emergent Bio Solutions were properly joined and served at the time of removal, the removing defendants must do more to explain why all other defendants did not consent to removal before the court can be satisfied that they complied with the rule of unanimity. *See Hicks v. Emery Worldwide, Inc.*, 254 F. Supp. 2d 968, 972–73 (S.D. Ohio 2003) ("A Notice of Removal filed by

---

[3] The court cannot find a reference to the name "John Borden" in the complaint.

[4] "Technical defects in the removal procedure, such as a breach of the rule of unanimity, may not be raised sua sponte, and must be raised by a party within thirty days of removal or they are waived." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516–17 (6th Cir. 2003) (citing 28 U.S.C. § 1447(c); *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995)). Here, Brown Sr.'s filing includes a section titled "Defect," stating that "the removing party must affirmatively explain the absence of any co-defendant in the notice of removal. . . . [N]ot all of the defendant[s] ha[ve] join[ed] the removal." (Doc. No. 8 at 3–4.) Given the liberal construction due to Brown Sr. as a pro se party, the court considers this a timely assertion of Brown Sr.'s procedural right to enforce the rule of unanimity.

[5] Brown Sr. also attached a copy of a summons purportedly sent to the Trousdale County mayor (Doc. No. 8 at 3, 7–8), but the court cannot find a reference to the county mayor—rather than the county itself—being named as a defendant in the complaint.

less than all defendants 'is considered defective if it does not contain an explanation for the non-joinder of those defendants.'") (quoting *Klein*, 1994 WL 91786 at *9 n.8); *Wright & Miller*, 14C Fed. Prac. & Proc. Juris. § 3730 (Rev. 4th ed. Apr. 2022) ("[T]he absence of the unserved defendant from the removal notice needs to be explained in the removal notice."). In other words, even if the non-removing defendants did not need to join or consent to the notice of removal (either because they were not properly served at the time of removal, or because they are nominal or formal parties), the removing defendants' explanation of their absence is inadequate.

Accordingly, within **30 DAYS** of the date this order is entered on the docket, the removing defendants **MUST** respond to this order in writing to explain why the absence of all other defendants from the notice of removal does not violate the rule of unanimity.

### IV. Instructions to Brown Sr. to Clarify His Stance on Remand

Brown Sr. **MAY** respond to this order to clarify if he is seeking remand of this case back to state court based on the defect he alleged in his prior filing—lack of unanimous consent to removal among all defendants. Brown Sr. must file any response within **30 DAYS** of the date this order is entered on the docket. If Brown Sr. clarifies that he is seeking remand, then the court will evaluate the removing defendants' response to this order to determine if removal was procedurally proper. But if Brown Sr. clarifies that he is not seeking remand, then the court will consider the issue waived and the case will remain in federal court. The court will also assume that Brown Sr. is waiving any procedural objection to removal if he chooses not to respond to this order.

There are two issues Brown Sr. may want to consider if this case remains in federal court. The first issue is that the complaint actually contains two cases in one—one case bringing claims originally belonging to Brown Jr. based on the circumstances surrounding his death (Brown Jr.'s wrongful death case); and one case bringing claims belonging only to Brown Sr. based on his

7

treatment at TTCC and MCCX after Brown Jr.'s death (Brown Sr.'s conditions-of-confinement case). A wrongful death case in Tennessee is a single cause of action consisting of the claims "the deceased would have had, had he survived." *Kline v. Eyrich*, 69 S.W.3d 197, 206 (Tenn. 2002) (quoting *Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 245 (Tenn. Ct. App. 1990)). It is not "a new cause of action for beneficiaries." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 844 (6th Cir. 2015) (citing *Lynn v. City of Jackson*, 63 S.W.3d 332, 335 (Tenn. 2001); *Jones v. Black*, 539 S.W.2d 123, 123 (Tenn. 1976)). And so, Brown Sr. cannot litigate Brown Jr.'s wrongful death case through the same complaint that he litigates his own conditions-of-confinement case. *See* Fed. R. Civ. P. 20 (permitting joinder of multiple defendants liable for "the same transaction, occurrence, or series of transactions and occurrences" where there is a "question of law or fact common to all defendants"). Therefore, if this case remains in federal court, then the court's next step will be to instruct Brown Sr. to choose which case he is pursuing here (Brown Jr.'s wrongful death case or Brown Sr.'s conditions-of-confinement case) and file an appropriate amended complaint.[6]

A second issue will arise if Brown Sr. chooses to pursue Brown Jr.'s wrongful death case— whether Brown Sr. has the right to bring the case in the first place. Brown Sr.'s authority to bring state or federal claims originally belonging to Brown Jr. is determined by Tennessee law. *See Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 682 (W.D. Tenn. 2015) ("Federal district courts in Tennessee have looked to [Tenn. Code. Ann.] § 20-5-106 to determine whether

---

[6] If this case remains in federal court and Brown Sr. files an amended complaint, then the court will conduct an appropriate initial review of the amended complaint. *See* 28 U.S.C. § 1915A(a)–(b) (requiring review of a complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity"); 42 U.S.C. § 1997e(c)(1) (establishing dismissal authority for claims brought by a prisoner "with respect to prison conditions"); *Trusty v. Centurion Health Servs.*, No. 19-5872, 2020 WL 548225, at *1 (6th Cir. Jan. 7, 2020) (noting that a private entity considered to be a state actor under § 1983 is a "government actor[] for purposes of § 1915A") (citing *Hutchison v. Wexford Health Servs.*, 638 F. App'x 930, 932 (11th Cir. 2016)).

8

certain individuals have standing to sue for violation of the decedent's civil rights [under Section 1983].") (collecting cases). Tennessee law "carefully prescribe[s] the priority of those who may assert the action on behalf of the decedent and any other beneficiaries." *Kline*, 69 S.W.3d at 207. "[T]he decedent's surviving spouse, if there is one, has 'the prior and superior right above all others' to file the wrongful death action and control the litigation. . . . If there is no surviving spouse, then the children have priority to bring the action; if no children survive, then the action passes to the decedent's next of kin." *Beard v. Branson*, 528 S.W.3d 487, 499–500 (Tenn. 2017) (quoting *Foster v. Jeffers*, 813 S.W.2d 449, 450 (Tenn. Ct. App. 1991)).

Here, the complaint does not say if Brown Jr. is survived by a spouse, but it does allege that he is survived by five children (including three minor children). (Doc. No. 1-1 at 8–9.) So even if Brown Jr. does not have a surviving spouse, it appears that Brown Jr.'s surviving children have priority over Brown Sr. to bring Brown Jr.'s wrongful death case.

Brown Jr.'s surviving children may waive the right to control Brown Jr.'s wrongful death case, which may pass the right to Brown Sr. (as Brown Jr.'s next of kin). *See Sipes v. Madison Cnty.*, No. 12-1130, 2014 WL 2035685, at *2 (W.D. Tenn. May 16, 2014) (citing *Koontz v. Fleming*, 65 S.W.2d 821, 824 (Tenn. Ct. App. 1933)). But Tennessee law is careful to conserve a child's right to bring a wrongful death action regarding the death of a parent. *See* Tenn. Code Ann. § 20-5-107(d) ("Nothing in this section shall be construed to prevent the institution of an action by a child with respect to the death of a parent."). So, for the children to waive their right to control Brown Jr.'s wrongful death case, it appears that they must do something more than simply "permit[] [Brown Sr.'s suit] to stand without objection." *Cf. Haynes v. Wayne Cnty.*, No. M2016-01252-COA-R3-CV, 2017 WL 1421220, at *4 (Tenn. Ct. App. Apr. 19, 2017) ("Notably, however, an *adult beneficiary* may waive his or her superior right to maintain a wrongful death

9

action by permitting an inferior beneficiary's action to stand without objection.") (emphasis added) (citing *Busby v. Massey*, 686 S.W.2d 60, 62 (Tenn. 1984)).

The court is not suggesting that Brown Sr. attempted to exclude Brown Jr.'s surviving children from this case, as he lists them (along with Brown Jr.'s mother) as co-plaintiffs in the complaint. (*See* Doc. No. 1-1 at 2, 8.) But Brown Jr.'s children did not sign the complaint, and as a party who is not licensed to practice law, Brown Sr. can only file a pro se wrongful death complaint if the statutory right to file the case has passed to him; he cannot litigate the case on behalf of individuals with statutory priority over him. *See Beard*, 528 S.W.3d at 504–05 (explaining that a surviving spouse who filed a pro se wrongful death complaint "was acting primarily on his own behalf pursuant to his right of self-representation").

If a wrongful death complaint names an improper beneficiary as the plaintiff, there is a liberal policy of allowing that defect to be cured by the filing of an amended complaint that substitutes the proper plaintiff. *See Beard*, 528 S.W.3d at 505 ("Tennessee courts have regularly permitted liberal amendments to wrongful death complaints, particularly with respect to substituting party plaintiffs.") (citing *Chapman v. King*, 572 S.W.2d 925, 927–28 (Tenn. 1978)). That is because "the cause of action is not changed by the substitution of the proper party plaintiff for the improper plaintiff." *Id.* (quoting *Chapman*, 572 S.W.2d at 928). Still, if Brown Sr. does not have the statutory right to bring Brown Jr.'s wrongful death case, then any amended wrongful death complaint must name the proper plaintiff and be filed by that plaintiff or that plaintiff's counsel.

### V. Motion to Stay and Appoint Counsel (Doc. No. 8)

Turning to Brown Sr.'s pending motion, he asks the court to stay the case while he completes a drug rehab program and to appoint counsel "to represent the deceased." (Doc. No. 8

at 4.) This first request is moot, as Brown Sr. has since submitted filings reflecting that he completed the program and wants the case to proceed. (*See* Doc. Nos. 13–14.) As for Brown Sr.'s second request, "[i]t is the rare civil case in which a court must provide a party an attorney, and only 'exceptional circumstances' require deviating from this rule." *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993)). Here, it would be premature for the court to consider appointing counsel before determining if this case will remain in federal court, and if so, whether Brown Sr. is pursuing Brown Jr.'s wrongful death case or his own conditions-of-confinement case. These threshold issues, at least, are not so complex that Brown Sr. is unable to represent himself at this time.

Accordingly, Brown Sr.'s motion (Doc. No. 8) is **DENIED without prejudice** to renewal if Brown Sr. can demonstrate exceptional circumstances at a later stage in the case. The Clerk is **DIRECTED** to send Brown Sr. a docket sheet along with this order.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge