# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **RICKY FLAMINGO BROWN SR.** **#134855,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:22-cv-00547 ) Judge Trauger ) |
| **CORECIVIC, et al.,** | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Ricky Flamingo Brown Sr. (Brown Sr.) filed a complaint in state court following the fatal overdose of his son, Ricky Flamingo Brown Jr. (Brown Jr.), at Trousdale Turner Correctional Center (TTCC). The complaint named sixteen defendants, and it included allegations regarding both the circumstances of Brown Jr.'s death (Brown Jr.'s wrongful death case) and Brown Sr.'s treatment following Brown Jr.'s death (Brown Sr.'s conditions-of-confinement case). Four defendants filed a notice of removal. The court ordered them to explain why the notice of removal did not violate the rule of unanimity. (*See* Doc. No. 7 at 7.) At the same time, the court allowed Brown Sr. to clarify whether he was still seeking remand, and it advised Brown Sr. of his next step if this case remains in federal court: choosing if he is pursuing Brown Jr.'s wrongful death case or his own conditions-of-confinement case. (*Id.* at 7–10 & n.6.)

Pending before the court is the removing defendants' explanation regarding the notice of removal (Doc. Nos. 19–20) and Brown Sr.'s response reflecting that (1) he is still seeking remand and (2) he intends to pursue Brown Jr.'s wrongful death case. (Doc. No. 18.) After considering the removing defendants' explanation and the available evidence, the court concludes that the notice of removal did not violate the rule of unanimity, so this case will remain in federal court. And in

light of Brown Sr.'s election to pursue Brown Jr.'s wrongful death case, the court will exercise its discretion to appoint counsel to pursue claims regarding Brown Jr.'s death.

I.   **Background**

The court previously summarized the full complaint, but because Brown Sr. has elected to abandon his own conditions-of-confinement claims, the court need not revisit the allegations regarding Brown Sr.'s treatment. Focusing on the allegations regarding Brown Jr.'s death and liberally construing them in favor of the plaintiff, the complaint alleges as follows:

In January 2021, Brown Jr. arrived to TTCC. (Doc. No. 1-1 at 2.) He was seen by medical providers, who noted his four prior gunshot wounds, pierced lungs, and high blood pressure. (*Id.* at 11–13.) As a result, Brown Jr. was placed in a housing unit for chronic care patients. (*Id.* at 12.)

On February 3, 2021, Brown Jr. overdosed on fentanyl. (*Id.* at 12, 17, 21.) A medical provider administered him a large dose of Narcan, a drug used to treat opioid overdoses. (*Id.* at 12, 17, 21.) Brown Jr. survived but experienced many symptoms after this event, including shortness of breath, coughing, a respiratory infection, face swelling, dizziness, headaches, and stomach pain. (*Id.* at 13.) Those symptoms led Brown Sr. to believe that Brown Jr. was allergic to Narcan. (*Id.* at 13, 17.) Assistant Warden Watwood received notice of this overdose. (*Id.* at 13.) The overdose also resulted in an "incident report and medical report" that was distributed to CoreCivic, Watwood, and Chief of Security McCloud. (*Id.*)

Around 8:30 p.m. on May 29, 2021, Brown Sr. spoke to Brown Jr. on a cell phone. (*Id.* at 15.) Around 9:00 p.m., two officers observed Brown Jr. bent over "in a stressful position" in his cell during a formal count, but they did not check on him.[1] (*Id.* at 13.) When the officers next came

---

[1] The complaint alleges that this failure violated TDOC and CoreCivic policy on informal counts, "stand up count[s]," ensuring a "breathing body" during a count, and doing "well cell check[s] every 30 minutes." (Doc. No. 1-1 at 13–14, 17, 23, 25.) The complaint also alleges that Chief of Security McCloud, Assistant

2

to Brown Jr.'s cell around 4:00 a.m., they noticed that the light was on and that Brown Jr.'s body had not moved from the position it was in at 9:00 p.m. (*Id.* at 14, 16.) The officers opened Brown Jr.'s cell door and called his name, but he did not respond. (*Id.* at 14.) The officers called medical, and a medical provider observed that Brown Jr.'s body was cold and stiff. (*Id.*) The provider administered CPR and a large dose of Narcan, but Brown Jr. was not revived, and he was pronounced dead in his cell. (*Id.* at 14, 16, 18–19, 22, 25.)

According to an autopsy report, Brown Jr. had been dead "for at least four hours" by the time the officers returned to his cell at 4:00 a.m. (*Id.* at 15.) The report stated that fentanyl was found in Brown Jr.'s system. (*Id.*) A picture of Brown Jr. reflected that his face was swollen, which Brown Sr. maintains "is a clear sign that he was allergic" to Narcan. (*Id.* at 16.) The complaint also alleges that the Narcan administered to Brown Jr. was inadequately labeled because it did not list "what happen[s] when a person has an allergic reaction to" it. (*Id.* at 21, 31.)

## II. Removing Defendants' Compliance with the Rule of Unanimity

As noted above, the notice of removal was filed by four of the sixteen defendants named in the complaint. Brown Sr. argues that this case should be remanded to state court because the removing defendants failed to obtain consent for removal from all defendants. (Doc. No. 8 at 3–4; Doc. No. 18 at 2–4.) The removing defendants argue that removal was procedurally proper because the other defendants were not properly served at the time of removal. (Doc. No. 19.) Upon consideration of the available evidence, the court agrees with the removing defendants.

"[A] defendant seeking removal to federal court must obtain the consent of all other 'properly joined and served' defendants to ensure the [removal] is unanimous." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015) (quoting 28 U.S.C. § 1446(b)(2)(A)). This

---

Warden Watwood, and Warden Frink failed to train the officers to follow these policies (*id.* at 17, 23, 25), and that Watwood was responsible for understaffing at TTCC. (*Id.* at 23.)

"rule of unanimity" does not encompass defendants who have "not been served with service of process at the time the removal petition is filed." *Beasley v. Wells Fargo Bank, N.A. for Certificate Holders of Park Place Sec., Inc.*, 744 F. App'x 906, 914 (6th Cir. 2018) (quoting *Klein v. Manor Healthcare Corp.*, No. 92-4328, 1994 WL 91786 at *9 n.8 (6th Cir. Mar. 22, 1994)).

The removing defendants submitted a declaration by their counsel, signed under penalty of perjury, asserting that: (1) the state court clerk told counsel's legal assistant twice prior to removal that no summonses had been issued to any defendant; and (2) the state court docket was consistent with the clerk's statement. (Doc. No. 20 at 1.) Brown Sr. nonetheless identifies six defendants who he maintains were properly served and did not consent to removal: Trousdale County, Emergent Bio Solutions, Chief of Security McCloud, Martin Frink, John Borden,[2] and Assistant Warden Watwood. (Doc. No. 8 at 3–4; Doc. No. 18 at 3–4.) As an initial matter, Borden was a party to the notice of removal, so his consent is not an issue. (*See* Doc. No. 1.) As for the other five defendants, Brown Sr. attaches documentation reflecting that he attempted to serve the defendants via certified mail. (Doc. No. 8 at 7–14; Doc. No. 18 at 6–27.) As explained below, however, this documentation does not establish that the defendants were properly served at the time of removal.

Service of process by certified mail is governed, in part, by Tennessee Rule of Civil Procedure 4.03(2). This rule establishes "mandatory requirement[s]" that must be "strictly enforced to confer jurisdiction over a party." *Hall v. Haynes*, 319 S.W.3d 564, 577 (Tenn. 2010) (quoting *Estate of McFerren v. Infinity Transp., LLC*, 197 S.W.3d 743, 748 (Tenn. 2006)). Even a party receiving "actual notice" of a lawsuit does not excuse a failure to comply with the rules governing proper service under Tennessee law. *Id.* (citations omitted).

---

[2] In its prior order, the court listed one of the sixteen defendants named in the complaint as "an unknown 'Hospital Administrator/ Healthcare Provider' employed by CoreCivic." (Doc. No. 15 at 5.) Brown Sr. has since clarified that he later identified this defendant as John Borden. (Doc. No. 18 at 2.)

4

Under Rule 4.03(2), a party attempting to demonstrate service by mail must send three things to the state clerk: (1) "the original summons"; (2) "an affidavit of the person making service setting forth the person's compliance with the requirements of [Rule 4.03(2)]"; and (3) the signed "return receipt." The return receipt must be signed by one of three people: (1) "the defendant"; (2) "a person designated by Rule 4.04"; or (3) a person designated "by statute." And where the defendant being served by mail is an individual, the return receipt generally must "be signed by the defendant and no one else." *Hall*, 319 S.W.3d at 577 (quoting Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 2–3(v) (2d ed. 2004)).

Brown Sr. submitted copies of summonses relating to the five defendants at issue. For two such defendants, Martin Frink and Chief of Security McCloud, the summonses are undated, unaccompanied by the required affidavit, and unaccompanied by a return receipt. (Doc. No. 18 at 6–9.) The same is true of one summons sent to Trousdale County. (Doc. No. 8 at 7–11.) That is plainly insufficient to demonstrate proper service by mail under Tennessee law.

For Trousdale County, there is a second summons apparently sent in a separate attempt at service. This summons is more complete, as it is accompanied by the required affidavit and a return receipt. (Doc. No. 18 at 19–21.) But the return receipt is signed by an individual named "A. Thomas," and Brown Sr. does not attempt to establish that Thomas was a person designated by Rule 4.04 or by statute to accept service on behalf of Trousdale County. *See* Tenn. R. Civ. P. 4.04(7) (specifying, for service upon a county, that a party deliver "a copy of the summons and of the complaint to the chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated; if not, by delivering the copies to the county court clerk"). And even if Thomas *was* authorized to accept service, the affidavit and return receipt are

5

both dated in August 2022—after the notice of removal was filed on July 20, 2022. So this summons cannot establish that Trousdale County was properly served at the time of removal.

As for Assistant Warden Watwood, Brown Sr. submitted a summons that is accompanied by the required affidavit, accompanied by a return receipt, and dated before the notice of removal was filed. (Doc. No. 18 at 15–17.) The certified mail return receipt form is addressed to Watwood, and there are boxes for "agent" and "addressee" next to the signature line. (*Id.* at 17.) The signature is illegible, but the "agent" box is checked, reflecting that, whoever signed the return receipt, it was not Watwood. (*Id.*) Based on the principle that individual defendants generally must sign return receipts themselves, *see Hall*, 319 S.W.3d at 577, that evidence alone would seem to establish that service on Watwood was improper. To be sure, the text of Rule 4.03(2) reflects that, regardless of the type of defendant, proper service can be achieved by obtaining the signature of a person designated by Rule 4.04—for an individual defendant, that would be "an agent authorized by appointment or by law to receive service on behalf of the individual served." Tenn. R. Civ. P. 4.04(1). But "a person with the authority to sign for and receive certified mail does not, without more, qualify as an agent authorized by appointment to receive service of process on behalf of an individual defendant." *Hall*, 319 S.W.3d at 581. And Brown Sr. does not even identify the signatory of the return receipt—much less establish that the individual who signed the receipt was an agent authorized to accept service of process on behalf of Watwood under Tennessee law.

Finally, Brown Sr. submitted a summons for Emergent Bio Solutions that is accompanied by the required affidavit, accompanied by a return receipt, and dated prior to removal. (Doc. No. 8 at 12–14; Doc. No. 18 at 25–27.) Rule 4.03(2), to restate, requires the signatory of a return receipt to be a person designated by Rule 4.04 or by statute. For a corporation, Rule 4.04(4) establishes that the proper individual to accept service is one of three people: (1) "an officer or managing

6

agent"; (2) "the chief agent in the county wherein the action is brought"; or (3) "any other agent authorized by appointment or by law to receive service on behalf of the corporation." Here, the certified mail return receipt form is addressed to Emergent CEO Daniel J. Nabi at Emergent's corporate headquarters in Gaithersburg, Maryland, but the signature on the return receipt is illegible, and neither the "agent" nor the "addressee" boxes are checked. (Doc. No. 8 at 14; Doc. No. 18 at 27.) So the court has no evidence of who actually signed the return receipt. And "the fact that a person is authorized to receive mail on behalf of a corporation and to sign receipts acknowledging the delivery of that mail does not mean that the same person is authorized by the corporation to accept service of process." *Hall*, 319 S.W.3d at 583 (quoting *Dill v. Berquist Constr. Co.*, 24 Cal. App. 4th 1426, 1438 (1994)). Accordingly, the court has no basis to find that the return receipt for Emergent Bio Solutions is signed by one of the people required by Tennessee law.

In sum, the available evidence reflects that Brown Sr. attempted to serve certain non-removing defendants via certified mail prior to removal, but he did not comply with the applicable rules for doing so. Because those rules are mandatory and strictly enforced, *see id.* at 577, the non-removing defendants were not properly served at the time of removal. Accordingly, the notice of removal did not violate the rule of unanimity, and this case will remain in federal court.

### III. Initial Review and Appointment of Counsel

Brown Sr. has elected to pursue claims regarding Brown Jr.'s death. The complaint alleges that the circumstances surrounding Brown Jr.'s death violated several laws, including Tennessee's wrongful death statutes and 42 U.S.C. § 1983. (*See* Doc. No. 1-1 at 8, 11.)

Upon initial review of the complaint under the Prison Litigation Reform Act,[3] accepting the allegations as true and liberally construing them in the plaintiff's favor, the complaint states at

---

[3] *See* 28 U.S.C. § 1915A(a)–(b) (requiring review of a complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity")

least two potential federal claims through Section 1983. One is for failing to protect Brown Jr. from the dangers of illegal drugs at TTCC, in violation of the Eighth Amendment, leading to his death from overdosing on fentanyl in late May 2021 just a few months after he first overdosed on fentanyl in early February 2021. *See Zakora v. Chrisman*, 44 F.4th 452, 471 (6th Cir. 2022) ("[A]n inmate who suffers a drug overdose will not automatically lose a failure-to-protect claim simply because he voluntarily ingested the drugs. Such a claim is cognizable if the inmate alleges, and ultimately establishes, that he was at serious risk of injury from the presence of drugs before the injury occurred."). And another is for deliberate indifference to Brown Jr.'s medical needs, also in violation of the Eighth Amendment, based on the officers' failing to check on Brown Jr. the night of his fatal overdose between a cell count at 9:00 p.m. and 4:00 a.m., despite observing him bent over in a stressful position during the initial cell count. *See id.* at 478 (finding that complaint stated claim for deliberate indifference to serious medical needs of prisoner who died of an overdose where officers were allegedly put on notice that the prisoner appeared to be unwell). The court may also exercise supplemental jurisdiction over any state-law wrongful death claims related to Plaintiff's federal claims. *See* 28 U.S.C. § 1367(a).

At this stage, however, Brown Sr. faces several obstacles to pursuing these potentially viable claims without the assistance of counsel. One important question, discussed in the court's prior order, is whether Brown Sr. is the proper person to pursue claims regarding Brown Jr.'s death. (*See* Doc. No. 15 at 8–10.) For both the Section 1983 claims and the state-law wrongful death claims, the answer to that question turns on Tennessee law. *See Crabbs v. Scott*, 880 F.3d 292, 294 (6th Cir. 2018) (looking to state law to determine whether Section 1983 claims survived an individual's death because "[n]o federal statute or rule says anything about the survivorship of § 1983 claims"); *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 682 (W.D. Tenn.

8

2015) ("Federal district courts in Tennessee have looked to [Tenn. Code. Ann.] § 20-5-106 to determine whether certain individuals have standing to sue for violation of the decedent's civil rights [under Section 1983]." (collecting cases)). In Tennessee, "the superior right to bring a survivor suit . . . is granted first to a surviving spouse, then to any children, then to a parent, then to a sibling, and so forth." *Sipes v. Madison Cnty.*, No. 12-1130, 2014 WL 2035685, at *2 (W.D. Tenn. May 16, 2014) (citing Tenn. Code Ann. § 31-2-104). "An inferior beneficiary may not sue until the person with the prior and superior right waives his right of action." *Id.* (citing *Koontz v. Fleming*, 65 S.W.2d 821, 824 (Tenn. Ct. App. 1933)).

Brown Sr. states that Brown Jr. does not have a surviving spouse, but he acknowledges that Brown Jr. has surviving children with the superior right to bring Section 1983 and/or wrongful death claims regarding Brown Jr.'s death. (*See* Doc. No. 18 at 2.) Brown Sr. states that he and Brown Jr.'s mother have discussed this issue with Brown Jr.'s surviving children, and that the children have all agreed to waive their rights so that Brown Sr. can pursue claims regarding Brown Jr.'s death. (Doc. No. 22-1 at 1–2.) Brown Sr. states that the children have all signed affidavits to that effect. (*Id.* at 2.) Although the court has not received any such affidavits, for now, the court will proceed on the assumption that Brown Jr.'s surviving children have or will have waived their right to pursue Section 1983 and/or wrongful death claims regarding Brown Jr.'s death.

For the Section 1983 claims, however, having the right to pursue claims does not necessarily mean that Brown Sr. may pursue the claims without legal representation. Brown Sr. may not pursue Section 1983 claims regarding Brown Jr.'s death without counsel unless he is the sole beneficiary of Brown Jr.'s estate and Brown Jr.'s estate has no creditors.[4] *See Cole v.*

---

[4] This restriction does not appear to apply to the state-law wrongful death claims. For those claims, Brown Sr. may be able to proceed pro se if the court proves correct in assuming that Brown Jr.'s surviving children have or will have waived their superior right of action. *See Beard v. Branson*, 528 S.W.3d 487, 504–05

9

*Robertson Cnty. Sheriff's Dep't*, No. 3:18-cv-00497, 2020 WL 738362, at *2 (M.D. Tenn. Jan. 28, 2020), *report and recommendation adopted* 2020 WL 736904 (M.D. Tenn. Feb. 13, 2020) (explaining that a father's "ability to prosecute § 1983 claims on behalf of his son's estate as a pro se party depends on whether [the father] is the estate's sole beneficiary and whether the estate has any creditors"); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (holding that a party "cannot proceed pro se with respect to [a decedent's] § 1983 action [if] he is not the sole beneficiary of the decedent's estate"). At this time, the court has no information about Brown Sr.'s relationship to Brown Jr.'s estate, so it is far from clear if Brown Sr. may pursue Section 1983 claims regarding Brown Jr.'s death without counsel. This issue goes to the heart of this court's authority to hear the case, as the federal questions presented by the Section 1983 claims regarding Brown Jr.'s death anchor the court's subject-matter jurisdiction. *See* 28 U.S.C. § 1331.

As this analysis shows, this case is complex. Simply put, for Brown Sr. to pursue Section 1983 claims and/or wrongful death claims regarding the death of his son is a more complex proposition, as both a factual matter and a legal matter, than it would be for Brown Sr. to pursue claims of his own. Moreover, Brown Sr. has submitted a copy of a memo from the warden at his place of confinement reflecting that he cannot make copies (or presumably incur other printing costs) without a court order, which may adversely impact Brown Sr.'s ability to prosecute this case.[5] (Doc. No. 17 at 12.)

Accordingly, the court concludes that exceptional circumstances justify appointing counsel to represent Brown Sr. in the pursuit of Section 1983 and/or wrongful death claims regarding

---

(Tenn. 2017) (explaining that a pro se party with the superior right to pursue wrongful death claims under Tennessee law "was acting primarily on his own behalf pursuant to his right of self-representation").

[5] According to this memo, this restriction was imposed as of February 23, 2023, because Brown Sr. owed "488.42 for copies" at that time. (Doc. No. 17 at 12.)

Brown Jr.'s death. *See Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (explaining that appointment of counsel in a civil case is appropriate only in exceptional circumstances, taking into account the type of case and the ability of the plaintiff to represent himself). Because this is a civil case, however, Brown Sr. does not have a constitutional right to representation. *See id.* The court can only *request* that an attorney accept representation in this case. *See* 28 U.S.C. § 1915(e)(1). The Clerk of Court will work to identify counsel who will accept representation in this matter, and the court is optimistic that its panel for such appointments will respond to those efforts.

The Clerk, therefore, is **DIRECTED** to identify pro bono counsel from the court's civil appointments panel and to notify the court when counsel is identified to be appointed in this matter. When counsel is identified, the court will enter an order of appointment.

### IV. Instructions for Appointed Counsel and Referral to the Magistrate Judge

Within **30 DAYS** of the order of appointment being entered, counsel **MUST** file a notice of appearance and an amended complaint that contains only claims regarding Brown Jr.'s death at TTCC. Counsel may request an extension of time to file the amended complaint, if necessary.

This case is **REFERRED** to the Magistrate Judge for case management, including disposition or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72 of the Federal Rules of Civil Procedure and the Local Rules of Court.

The pending motions (Doc. Nos. 17, 21), filed by Brown Sr. pro se, are **DENIED** without prejudice to appointed counsel filing whatever motions they deem appropriate.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge